1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EDUARDO FELIX,                            Case No.  1:20-cv-01774-JLT-BAM

12                      Plaintiff,
                                               **FINDINGS AND RECOMMENDATIONS**
13          v.                                 **REGARDING PLAINTIFF'S MOTION FOR**
                                               **SUMMARY JUDGMENT**
14   LELAND DUDEK, Acting Commissioner
     of Social Security,[1]                    (Docs. 18, 21)
15
16                      Defendant.

17

18

19                               **<u>INTRODUCTION</u>**

20          Plaintiff Eduardo Felix ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance

22   Benefits under Title II of the Social Security Act.  The parties' briefing on the motion was submitted,

23   without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.

24   (Docs. 18, 21.)  Having considered the parties' briefs, along with the entire record in this case, the

25   Court finds that the decision of the Administrative Law Judge ("ALJ") was supported by substantial

26

27   _____
     [1] Leland Dudek became the Acting Commissioner of Social Security in February 2025.  Pursuant to
     Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted for Kilolo Kijakazi as
28   Defendant in this suit.

                                           1

evidence in the record and was based upon proper legal standards.  Accordingly, this Court will recommend affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff applied for Title II Disability Insurance Benefits on December 21, 2016, alleging that he became disabled on June 1, 2015.  AR 189-91. [2]  The claim was denied initially on February 16, 2017, and on reconsideration on April 20, 2017.  AR 79, 80-92.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Kellie Wingate Campbell held a hearing on May 16, 2019.  AR 35-63.  ALJ Campbell issued an order denying benefits on the basis that Plaintiff was not disabled on June 26, 2019.  AR 20-34.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied.  AR 5-19.  This appeal followed.

### Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 20-34.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2015.  AR 25.  The ALJ identified the following severe impairments: major depressive disorder, anxiety disorder, posttraumatic stress disorder (" PTSD"), and gambling addiction.  AR 26. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 26-28.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels except that Plaintiff was limited to remembering and carrying out simple, routine tasks and making simple work-related decisions; could not perform production pace tasks with strict hourly goals; could have occasional contact with

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  supervisors and brief, incidental contact with co-workers and the general public; and would be off-task

2  five percent of the workday.  AR 28.  The ALJ considered "all symptoms and the extent to which

3  these symptoms can reasonably be accepted as consistent with the objective medical evidence and

4  other evidence," as well as "opinion evidence."  *Id.*

5          The ALJ found that Plaintiff had no past relevant work, was defined as a younger individual on

6  the alleged disability onset date, had at least a high school education and could communicate in

7  English, and that transferability of job skills was not material to the disability determination.  AR 32-

8  33.  Given Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs

9  that existed in significant numbers in the national economy that Plaintiff could perform.  AR 33-34.

10  The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and

11  RFC included: Stubber, Retail Trade (DOT No. 222.687-034, unskilled, medium exertional level, with

12  approximately l00,000 such occupations in the national economy); Scrap Sorter (DOT No. 509.686-

13  018, unskilled, medium exertional level, with approximately 30,000 such occupations in the national

14  economy); and Lumber Straightener (DOT No. 669.687-018, unskilled, medium exertional level, with

15  approximately 100,000 such occupations in the national economy).  *Id.*  The ALJ therefore concluded

16  that Plaintiff had not been disabled from June 1, 2015, through the date of the decision.  AR 34.

17                                            **SCOPE OF REVIEW**

18          Congress has provided a limited scope of judicial review of the Commissioner's decision to

19  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

20  Court must determine whether the decision of the Commissioner is supported by substantial evidence.

21  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

22  402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

23  1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

24  adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be

25  considered, weighing both the evidence that supports and the evidence that detracts from the

26  Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

27  evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

28  *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff first argues that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms. (Doc. 18 at 7-11.) Plaintiff also argues that the ALJ failed to properly weigh the weigh the opinion of Marian Carapezza, LCSW or provide a germane reason for rejecting her opinion. (*Id.* at 11-13.) Finally, Plaintiff argues that the Appeals Council failed to appropriately evaluate new evidence submitted by Plaintiff after the ALJ's decision. (*Id.* at 13-15.)

### A.  Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony. (Doc. 18 at 7-11.) In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004).

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 29. However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record. *Id.* The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

First, the ALJ found that Plaintiff's allegations were not fully consistent with the medical and other evidence, noting that Plaintiff's "statements and allegations are not fully consistent with the medical and other evidence." AR 47. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ contrasted Plaintiff's allegations with the objective findings as follows:

> In general, the claimant has presented as depressed and/or anxious with a congruent or constricted affect, some psychomotor slowing, and limited insight and judgment, primarily related to his gambling. He has also reported vague, transient suicidal ideation (Exhibits 1F/53, 72, 79, 97, 105, 173, 199, 224, 254, 266; 2F/46, 114; 3F/98, 164-65; 4F/133, 225; 5F/117; 6F/72, 86-87, 109, 186-87, 214; 7F/19; 8F/128-29, 152; 10F/7; 11F/39-40, 55-56, 69, 94, 109-10). The claimant was unable to complete the serial sevens task on September 14, 2016 (Exhibits 1F/24-25, 10F/34-35). He presented as unkempt on November 16 and December 14, 2016 (Exhibit 1F/6, 8, 10F/13, 15). On August 7, 2018 and February 12, 2019, the claimant appeared tired, apathetic, and poorly motivated (Exhibit 11 Fil 4. 36). In contrast. multiple examinations have yielded grossly normal findings (Exhibits 1F/118. 192; 5F/63, 100, 163, 178, 205: 7F/10; 5F/60-61; 11F/18, 21, 23, 27, 32, 57, 74, 81, 88, 113). Moreover, the claimant has not been prescribed treatment reasonably commensurate with his allegations. He was admitted for inpatient psychiatric care four years ago from June 24 to June 30, 2015. Otherwise, his mental impairments have been managed

5

with case management. individual therapy, group support, and medication management, such as the use of bupropion and venlafaxine hydrochloride. The medical evidence also reflects several failures to appear for appointments, noncompliance with medication treatment at times, and initial refusals to engage in individual therapy or group therapy related to gambling (Exhibits 6F/14, 18, 20, 36, 39, 41. 58: 11F/13; 18, 20, 35, 55; 73).  When he did attend group therapy, he listened attentively, asked appropriate questions. And provided feed feedback and support as necessary, completing his assignment (Exhibit 2F/110-112).

As is indicated above, although the claimant has presented with some chronic abnormalities, those medical signs have not been reasonably consistent with the claimant's allegations regarding the intensity, persistence, and limiting effects of his impairments. He has simply not demonstrated abnormalities commensurate with the degree of limitations alleged. Notably absent in this regard is evidence of uncontrollable or inconsolable anxiety, depression, or hostility; serious social deficits; or persistent memory, attention. or concentration deficits. Notably, he has not been recommended for greater treatment measures reasonably consistent with the degree of limitation he alleged. Rather, he has been prescribed routine, conservative care since July 2015, and that care is not objectively documented to have resulted in limiting side effects. He often reported improvement with medication, which he acknowledged taking on a "hit or miss" basis or when he felt like taking it (Exhibits 6F/13, 39, 45; 11F/13, 35, 55, 68; 93).

After a careful review of the record, the undersigned finds that the medical evidence does not reasonably support a conclusion that the claimant has any greater functional limitations than are included in the above residual functional capacity. For example, the record does not document exacerbations of the claimant's medical conditions that occur with such frequency as would reasonably give rise to a conclusion that the claimant would be absent from work with any regularity. Similarly, the claimant has not presented with pain behavior, profound emotional distress, regular exacerbations of his impairments, fatigue, or deficits with attention or concentration that would support a finding that he either requires extra work breaks in addition to, or would be off-task beyond. what can be accommodated by the work breaks customarily offered by competitive employment (i.e., a 15-minutc morning break, a 30-minute lunch break, and a 15-minutc afternoon break). The record also does not reasonably support a finding that the claimant has any greater social limitations than that he can have occasional contact with supervisors and brief, incidental contact with co-workers and the general public. For example, he is not noted to have had difficulty waiting in public areas, to behave inappropriately with office staff, or to be unable to form a therapeutic rapport with treatment providers. He has operated a

6

1                 motor vehicle on public highways numerous times since the alleged
2                 onset date, such as to medical appointments, to casinos and to provide
                transportation for a family member.

3 AR 29-31.

4     The ALJ appropriately contrasts Plaintiff's allegations that that his mental impairments

5 prevented him from working with evidence from medical reports that demonstrated relatively normal

6 findings.  For instance, a cited June 2015 report included Plaintiff's reported "intense anxiety and

7 feeling overwhelmed," anhedonia, difficulty concentrating, lack of energy, and passive suicidal

8 ideation, but the Mental Status Exam found that Plaintiff was "Dressed in clean VA attire, hygiene and

9 grooming were good," "Full" cooperation, good eye contact, normal speech, "good" mood,

10 "Euthymic, reactive with good range" affect; linear, logical, and goal directed thought process; and

11 thought content was negative for delusions, hallucinations, paranoia, current suicidal or homicidal

12 ideation; and appeared alert and oriented with grossly intact memory.  AR 432.  Additionally, a cited

13 August 2016 progress note stated that Plaintiff "participated during group by listening attentively,

14 asking appropriate questions, and providing feedback and support as necessary… completed his

15 practice assignment related to daily completion of the Challenging Beliefs Worksheets and [wrote] a

16 final Impact Statement…" and was "optimistic about the future, and described how his beliefs have

17 shifted over the course of the group."  AR 695.  The ALJ therefore appropriately used the lack of

18 medical evidence as one factor to discount Plaintiff's symptoms testimony.

19     Second, the ALJ noted that Plaintiff's work record and activities of daily living did not suggest

20 the extreme limitations that Plaintiff alleged.  AR 31.  An ALJ may properly discount a claimant's

21 subjective complaints when the daily activities demonstrate an inconsistency between what the

22 claimant can do and the degree that disability is alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112–13

23 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent

24 with the alleged symptoms"), superseded by regulation on other grounds.  Even where a plaintiff's

25 activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's

26 testimony to the extent that they contradict claims of a totally debilitating impairment.  *Id*. at 1113.

27

28

                                        7

Here, the ALJ stated:

> In further assessing the claimant's allegations, the undersigned has given due consideration to the claimant's work record and activities of daily living. First, the claimant has a steady work record prior to the alleged onset date of disability: however, the undersigned notes that the claimant has reported that he has no intention of ever returning to work (Exhibits 12D; 1F/8, 19). Second, as is indicated in the above discussion of the "paragraph B" criteria and review of the claimant's medical records, the cumulative evidence does not establish a reasonable basis for the extreme limitations the claimant alleged with regard to his activities of daily living. The weight of the evidence indicates that it is more likely than not that, to the extent the claimant's activities of daily living are limited, this is due primarily to non-disability factors, such as a lifestyle choice, rather than being the necessary consequence of his impairments.

AR 31. In discussing the "Paragraph B" criteria, the ALJ earlier noted:

> The claimant alleged that his abilities to engage in virtually all activities of daily living have been profoundly limited by his impairments. For example, he reported relying on his brother and mother to perform household chores and that be has no hobbies (Exhibit 7E). "Claimant has stopped brushing his teeth on a daily basis. He no longer gets any haircuts and does not socialize." (Exhibit 5E/5). "I do what I can when I'm not out of my mind. Like take out trash." (Exhibit 10E/5). By comparison to his representations to the Social Security Administration. the claimant's treatment records indicate he is independent with his activities of daily living (Exhibits 2F/52, 9F/5, 11F/26). The record also notes that the claimant is able to function outside his home by walking regularly, doing yard work, and going to a casino (Exhibits 1F/8; l0F/5, 11, 15; 11F/13, 36, 39, 57, 69, 73, 81). He testified to driving his mother 172 miles one-way to Salinas, California after the alleged onset date of disability (Claimant's Testimony)…

AR 27.

In the examination of Plaintiff's daily activities, the ALJ contrasted the alleged extreme limitations with reports that Plaintiff's daily activities were less limited. AR 27; 31; 2186 (February 2019 report noting Plaintiff was doing yardwork and was gambling at local casinos once weekly); AR 2199 (August 2018 report by caregiver support coordinator noting Plaintiff "was able to complete all of his ADL's and we found no safety issues nor did either one of them mention any safety issues which required regular supervision…" and that Plaintiff was "'Independent' of his ADL's"). By contrasting Plaintiff's alleged disabilities with Plaintiff's reported daily activities, the ALJ

8

appropriately used Plaintiff's reported daily activities to discount his symptoms testimony. *Molina*, 674 F.3d at 1112-13.

Third, the ALJ further noted Plaintiff's conservative treatment. AR 30. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."); *see also* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (medication effectiveness and treatment history are relevant factors for evaluating a claimant's symptom testimony).

Here, the ALJ noted that Plaintiff had:

> …not been recommended for greater treatment measures reasonably consistent with the degree of limitation he alleged. Rather, he has been prescribed routine, conservative care since July 2015, and that care is not objectively documented to have resulted in limiting side effects. He often reported improvement with medication, which he acknowledged taking on a "hit or miss" basis or when he felt like taking it (Exhibits 6F/l3, 39, 45; 11F/13, 35, 55, 68; 93).

AR 30. The record cited reflects that, even when Plaintiff was not fully compliant with medication prescriptions, his mental exam findings were generally normal and reflected improvement. *See* AR 2186-87 (February 2019 report noting generally normal mental exam findings but "Transient passive SI" and that Plaintiff "endorses adherence with bupropion and venlafaxine with no adverse effects. He says he takes VPA 'hit or miss', last took VPA 3 weeks ago… When he does take Divalproex, Veteran endorses sleeping better, getting 7-8 hours."); 2208-09 (August 2018 report with generally normal mental exam findings but "Transient passive SI" and incongruent affect, and noting Plaintiff "endorses adherence with bupropion and venlafaxine with no adverse effects. He says he takes VPA very rarely, sometimes off the med for most of the month… When he does take Divalproex, Veteran endorses sleeping better, getting 7-8 hours."); 2228 (February 2018 report noting general normal mental exam findings, Plaintiff was feeling "hopeful," and that Plaintiff was "Adherent with Bupropion & Venlafaxine daily with no adverse effects. Endorses 45% adherence with Divalproex at bedtime…

When he does take Divalproex, Veteran endorses sleeping better, getting 7-8 hrs. sleep/night and awakes feeling rested and refreshed.").  Accordingly, the ALJ appropriately used evidence of conservative, effective treatment in discounting Plaintiff's symptoms testimony.

Plaintiff argues that the ALJ cherry-picked evidence of to support the conclusion that Plaintiff's care was conservative or routine, instead emphasizing Plaintiff's 2016 108-day stay in a trauma recovery program and other instances of worsening symptoms.  (Doc. 18 at 8-10.)  Indeed, an "ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."  *Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir.2001)).  Here, the ALJ reviewed the record related to Plaintiff's severe mental impairments and explained that Plaintiff "often reported improvement with medication" despite taking medication on a "hit or miss" basis.  AR 30; 2186-87; 2208-09; 2228.  The ALJ did not ignore the medical record regarding Plaintiff's severe mental impairments but instead cited to different findings over multiple years to support the conclusion that Plaintiff's impairments were controlled with conservative treatment.  *Id.*  When viewing the medical record as a whole, it was reasonable for the ALJ to conclude that Plaintiff's impairments were controlled effectively with conservative treatment.  Moreover, to the extent Plaintiff suggests an alternative interpretation of the evidence (*See* Doc. 18 at 8-11), this is insufficient to establish reversible error.  If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Burch*, 400 F.3d at 679).

Accordingly, the ALJ did not err in discounting Plaintiff's symptoms testimony.

**B.  Other Source Opinion of LCSW Marian Carapezza**

Plaintiff next contends that the ALJ failed to properly weigh the opinion of Marian Carapezza, LCSW.  (Doc. 18 at 11-13.)  Under the regulations then-applicable to Plaintiff's claims, as a licensed clinical social worker, LCSW Carapezza is not an "acceptable medical source," but rather an "other source."  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (acceptable medical sources are generally limited to physicians and other qualified specialists); 20 C.F.R. 404.1513(d) ("other sources" include nurse practitioners and physicians' assistants).  Although required to consider evidence from

1    "other sources," an ALJ may discount testimony from these other sources by providing reasons

2    "germane to each witness for doing so." *See Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016);

3    *Molina*, 674 F.3d at 1111.

4            Here, the ALJ assigned LCSW Carapezza's opinion "little weight," writing:

> The February 2, 2017 statement of treating source Marian Carapezza,
> LCSW, is given little weight as opinion evidence (Exhibit 9F). Ms.
> Carapezza is not an acceptable medical source (20 CFR, 404.1527(f)).
> More significantly, her opinion is neither supported by nor consistent
> with the preponderance of the evidence. Ms. Carapezza expressly based
> her opinion upon the claimant's self-reported limitations, including his
> purported inability to pay attention for the duration of one-hour
> television programs and his purported anger episodes, particularly
> towards authority figures. However, as is explained above, such
> abnormalities are not documented in the case record. For example, the
> claimant's treatment records do not document any persistent deficits with
> attention or concentration. He merely had difficulty with the serial
> sevens task during one examination. Similarly, although he has reported
> significant social deficits, he has not displayed any serious social
> abnormalities upon examination and, by his own report, is able to
> function in such social settings as a casino. Accordingly, the statement
> of Ms. Carapezza is given little weight as opinion evidence.

16   AR 31-32.

17           The ALJ did not err by according little weight to LCSW Carapezza's opinion because it was

18   inconsistent with objective findings on clinical examination.  AR 31-32.  The fact that an "other

19   source" opinion is inconsistent with objective medical evidence in the record is a germane reason to

20   discount it.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("The ALJ accepted the

21   testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and

22   the objective evidence in the record; he rejected portions of their testimony that did not meet this

23   standard."); *Molina*, 674 F.3d at 1112 (finding ALJ properly rejected opinion of physician's assistant

24   based on inconsistency with objective medical evidence); *see also Shorter v. Saul*, 777 F. App'x 209,

25   211 (9th Cir. 2019) (finding ALJ properly rejected other source opinion of nurse practitioner based on

26   inconsistency with objective medical evidence, including treatment notes showing largely

27   unremarkable examinations and findings of improvement with medication).

28

11

Here, the ALJ noted that LCSW Carapezza based her opinion upon Plaintiff's self-reported more extreme abnormalities which were "not documented in the record," and the ALJ instead pointed to the lack of treatment records demonstrating deficits in attention or concentration. AR 30-32; *see* AR 2228 (February 2018 report noting normal thought process findings); 2282 (April 2017 report noting "Thought process (associations, concentration, abstractions, judgments, insight, serial 7s): Intact"). The ALJ therefore offered the germane reason of inconsistency with objective medical evidence for assigning little weight to LCSW Carapezza's opinion.[4]

Plaintiff argues that the ALJ cherry-picked evidence in discounting LCSW Carapezza's opinion. (Doc. 18 at 12-13.) An "ALJ may not 'cherry-pick' evidence in discounting a medical opinion." *Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023). When district courts have analyzed arguments regarding cherry-picking, they have examined whether the ALJ appropriately reviewed the record as a whole. *Id.* Here, the ALJ cited to different reports from different years that appear to be fairly representative. AR 30-32; *see* AR 2228, 2282. Moreover, in place of the ALJ's interpretation, Plaintiff offers his own interpretation of the record. Again, an alternative interpretation of the evidence is insufficient to establish reversible error. If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154. Plaintiff's argument regarding cherry-picking of evidence in discounting LCSW Carapezza's opinion is therefore unavailing.

Accordingly, the ALJ did not err in assigning LCSW Carapezza's opinion little weight.

**C. Plaintiff's New Evidence & Appeals Council Analysis**

Plaintiff contends that the Appeals Council erred by failing to incorporate and evaluate new material evidence submitted by Plaintiff. (Doc. 18 at 13-15.) Subsequent to his ALJ hearing, Plaintiff obtained two medical source statements from treating providers Joy Anne Rodriguez, M.D. and Jeffrey Fay, MSN, PMHNP. AR 11-15 (Physical Medical Source Statement from Joy Anne

---

[4] Plaintiff argues that the ALJ rejected LCSW Carapezza's opinion because it was based upon self-reporting. (Doc. 18 at 12.) However, the ALJ did not solely discount the opinion because it was based upon self-reporting, but because it was inconsistent with the objective medical evidence, a germane reason for discounting an "other source." *Bayliss*, 427 F.3d at 1218.

Rodriguez, M.D., dated November 19, 2019); AR 16-19 (Medical Residual Functional Capacity Questionnaire from Jeffrey Fay, MSN, PMHNP, dated November 14, 2019). In its notice, the Appeals Council wrote: "You submitted a Physical Medical Source Statement, completed by Joy Anne Rodriguez, M.D., dated November 19, 2019 (5 pages); and a Mental Residual Functional Capacity Questionnaire, completed by Jeffrey Fay, MSN, PMHNP, dated November 14, 2019 (4 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision." AR 6. Plaintiff contends that this evidence was new, material, consistent with the record, and supported Plaintiff's allegations, but that the Appeals Council failed to properly incorporate this evidence into its analysis. (Doc. 18 at 13-15.)

Social Security regulations permit claimants to submit new and material evidence to the Appeals Council, which it must consider in determining whether to review the ALJ's decision. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). If new and material evidence is submitted after the ALJ's decision, the Appeals Council shall consider such evidence "only where it relates to the period on or before the date of the [ALJ] hearing decision." *See* 20 C.F.R. § 404.970(b). The Appeals Council will overturn an ALJ's decision only when it determines, after a review of the entire record, including the new and material evidence, that the decision is contrary to the weight of the evidence. *Id.*

In the Ninth Circuit, where a claimant has submitted additional materials to the Appeals Council in requesting review of the ALJ's decision, the district court may consider the new evidence in determining whether the ALJ's decision is supported by substantial evidence "because the Appeals Council addressed them in the context of denying [the claimant's] request for review." *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (*citing Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993)); *see also Brewes*, 682 F.3d at 1163 (holding that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). However, courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes*, 682 F.3d at 1161. "When the Appeals Council declines review, the

ALJ's decision becomes the final decision of the Commissioner ... and the district court reviews that decision for substantial evidence, based on the record as a whole." *Id.* at 1161–62 (citation and quotation marks omitted). While the Court considers the evidence submitted to the Appeals Council in conjunction with the rest of the record in reviewing the ALJ's decision, "the Court cannot remand based solely on the actions of the Appeals Council[.]" *Berschneider v. Colvin*, 2015 WL 1497835, at *9 (E.D. Cal. Mar. 31, 2015).

Plaintiff's argument that this case should be remanded to the ALJ so that he may consider the new evidence from Dr. Rodriguez and Nurse Fay is misplaced. The Appeals Council has already considered this evidence and found that it does not provide a basis for changing the ALJ's decision. AR 6. "The Appeals Council is not required to provide a 'detailed rationale' or make any particularized evidentiary showing as to why it rejected a post hearing opinion." *Moreno v. Colvin,* 2015 WL 966090, at *4 (E.D. Cal. Mar. 4, 2015) (citing *Taylor v. Comm. of Soc. Sec. Admin.,* 659 F.3d 1228, 1233 (9th Cir. 2011); *Warner v. Astrue,* 859 F.Supp.2d 1107, 1115 (C.D. Cal. 2012); *Crater v. Astrue,* 2012 WL 3106625, *5 (C.D. Cal. July 30, 2012)). The issue before this Court is not whether the Appeals Council should have remanded the case to the ALJ with instructions to consider these opinions, but rather whether the Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence in light of the post-hearing medical reports. Accordingly, the Court considers this evidence in reviewing the administrative record. *Lopez v. Colvin,* 2015 WL 1469035, at *5 n. 3 (E.D. Cal. Mar. 30, 2015). However, a review of the record reveals that Dr. Rodriguez's and Nurse Fay's statements do not undermine the ALJ's decision.

In her November 19, 2019 Physical Medical Source Statement, Dr. Rodriguez noted that she had been in contact with Plaintiff annually since 2016 and that Plaintiff's diagnosis was "Major depression" but that she would "defer to psychiatry" for the prognosis. AR 12. Dr. Rodriguez further wrote that Plaintiff's symptoms included "Depression, fatigue, nightmares" but wrote "N/A" in the space to identify clinical findings and objective signs. *Id.* In the space to describe treatment and responses or side effects, Dr. Rodriguez wrote "Followed in Mental Health," and wrote "N/A" for neurological abnormalities including Sensation, Reflex, and Motor. *Id.* Dr. Rodriguez marked that Plaintiff's impairments lasted or could be expected to last at least twelve months and emotional factors

14

contributed to the severity of Plaintiff's symptoms and functional limitations.  *Id.*  She further marked that Plaintiff could sit for more than two hours at one time, could stand for more than two hours at one time, could sit and stand or walk for at least six hours in an eight-hour working day, did not require a job that permitted shifting positions, did not need to include periods of walking around during an eight-hour working day, could lift and carry 20 and 50 pounds occasionally, and could carry 10 or less pounds frequently.  AR 12-13.  Dr. Rodriguez also marked that Plaintiff could occasionally twist, stoop, and crouch; could frequently climb stairs or ladders; did not have significant limitations with reaching, handling, or fingering; and that Plaintiff's impairments were likely to produce "good days" and "bad days."  AR 14.  Dr. Rodrigurz wrote "defer to mental health" for questions regarding how long Plaintiff would be "off task," how well Plaintiff could tolerate work stress, how many absences Plaintiff would have, and other limitations Plaintiff would have affecting his ability to work at a regular job on a sustained basis.  AR 14-15.  She also wrote that Plaintiff would not need to take unscheduled breaks during a working day.  AR 15.

Dr. Rodriguez does not explain what evidence supports the conclusion that Plaintiff would be unable to work for at least a year.  In multiple instances, Dr. Rodriguez writes "defer to mental health" and wrote "N/A" in the space to identify which clinical findings and objective signs support the depression diagnosis or the symptoms of depression, fatigue, and nightmares.  AR 12.  Therefore, Dr. Rodriguez's Physical Medical Source Statement does not undermine the ALJ's decision.  *See Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir. 1985) ("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ") (citing 20 C.F.R. § 416.927).

In his Mental Residual Functional Capacity Questionnaire dated November 14, 2019, Nurse Jeffrey Fay, MSN, PMHNP noted that he had seen Plaintiff for a 30-minute appointment, diagnosed Plaintiff with "Major Depression" and that the prognosis was "fair to good," with the limitations established at the Fresno VA Mental Health Services in September 2016.  AR 17.  Nurse Fay listed Plaintiff's medications as Divalproex, Venlafaxine, and Bupropion with no adverse effects.  *Id.*  He further marked that Plaintiff was not precluded in remembering locations and work-like procedures, understanding and remembering very short and simple instructions, understanding and remembering detailed instructions, carrying out very short and simple instructions, making simple work-related

decisions, asking simple questions or requesting assistance, being aware of normal hazards and taking appropriate precautions, and traveling in unfamiliar places or using public transportation. AR 17-18. He also marked that activities Plaintiff would be precluded from performing for 15% or more of an eight-hour work day included: maintaining attention and concentration for extended periods of time, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychological based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, accepting instructions and responding appropriately to "critics from supervisors," getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. *Id.* Nurse Fay further marked that Plaintiff would be precluded for five percent of an eight-hour work day from carrying out detailed instructions. AR 18. Nurse Fay did not write anything in the spaces to "explain your responses" for the opined limitations. AR 17-18. He wrote that Plaintiff's behavioral condition was not noted to exacerbate Plaintiff's experience of pain or other physical symptoms, that Plaintiff would likely be absent from work five or more days per month, and that Plaintiff would likely be unable to complete an eight-hour work day five or more days per month. AR 19. Nurse Fay wrote that Plaintiff had "no cognitive deficits noted" in a space regarding reduced intellectual functioning but marked that Plaintiff could not manage benefit payments. *Id.* Finally, in response to the question "Is your patient a malingerer," Nurse Fay wrote "possibly." *Id.*

As with Dr. Rodriguez's opinion, Nurse Fay did not explain what evidence supported the more extreme limitations opined. AR 17-18. These conclusory statements are insufficient to undermine the ALJ's decision. *Nyman*, 779 F.2d at 531. Additionally, the questionnaire appears to align with some of Plaintiff's symptoms testimony regarding fatigue, deficits with attention or concentration, absences, and social limitations that the ALJ noted were unsupported by the medical evidence. AR 29-31. The

1    evidence cited by the ALJ demonstrated that despite reported mental impairments, Plaintiff's mental

2    status exam findings were relatively normal and that Plaintiff was able to participate and contribute in

3    group therapy settings.  AR 432, 695.  Moreover, Nurse Fay also wrote in the questionnaire that

4    Plaintiff was "possibly" a malingerer.  AR 19.  Considering Nurse Fay's questionnaire in light of the

5    administrative record, the Court finds that the ALJ's decision remains supported.

6           While the statements from Dr. Rodriguez and Nurse Fay are relevant and material to the extent

7    the Appeals Council included them in the record, the ALJ's findings are nonetheless supported by

8    substantial evidence when this evidence is considered in the context of the entire record.  Accordingly,

9    the new evidence and Appeals Council's analysis do not provide a basis for remand.

10          ///

11          ///

12          ///

13          ///

14          ///

15          ///

16          ///

17          ///

18          ///

19          ///

20          ///

21          ///

22          ///

23          ///

24          ///

25          ///

26          ///

27          ///

28          ///

17

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.    Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED;

2.    The agency's determination to deny benefits be AFFIRMED; and

3.    The Clerk of this Court be directed to enter judgment against Plaintiff Eduardo Felix and for Defendant Leland Dudek, Acting Commissioner of Social Security.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered**. The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 21, 2025**          /s/ *Barbara A. McAuliffe*
                                      UNITED STATES MAGISTRATE JUDGE