**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDUARDO FELIX, | Case No. 1:20-cv-1774 JLT BAM |
| Plaintiff, | ORDER DECLINING THE FINDINGS AND RECOMMENDATIONS, GRANTING PLAINTIFF'S APPEAL, DENYING DEFENDANT'S REQUEST TO AFFIRM, AND REMANDING THE ACTION FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| v. | |
| FRANK BISIGNANO, Commissioner of Social Security[1], | |
| Defendant. | ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF EDUARDO FELIX AND AGAINST DEFENDANT FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY |
| | (Docs. 18, 21, & 23) |

Eduardo Felix seeks judicial review of a final decision denying his application benefits under Title II of the Social Security Act. (Docs. 1, 18.) Plaintiff asserts the administrative law judge erred in evaluating the record, and the Appeals Council erred by failing to admit and consider additional evidence submitted by Plaintiff after the ALJ issued her decision. (Doc. 18.) The Commissioner contends the decisions of the ALJ and the Appeals Council were proper. (Doc. 21.) For the reasons set forth below, Plaintiff's appeal is **GRANTED**, and the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano as the defendant in this action.

1

1    **I.    Decisions of the ALJ and Appeals Council**

2         The ALJ evaluated Plaintiff's application using the five-step sequential evaluation set

3    forth in 20 C.F.R. § 404.1520.  (Doc. 12-3 at 24-35.)  First, the ALJ determined Plaintiff did not

4    engage in substantial gainful activity since the alleged onset date of June 1, 2015.  (*Id*. at 26.)  At

5    step two, the ALJ determined Plaintiff had the following medically determinable impairments:

6    "major depressive disorder, anxiety disorder, posttraumatic stress disorder ('PTSD'), and

7    gambling addiction."  (*Id.* at 27.)  At step three, the ALJ found Plaintiff's impairments did not

8    meet or medically equal a Listing.  (*Id.* at 27-29.)  Next, the ALJ found:

9
          [T]he claimant has the residual functional capacity to perform a
10        range of work at all exertional levels.  He is limited to remembering
          and carrying out simple, routine tasks and making simple work-
11        related decisions.  He cannot perform production pace tasks with
          strict hourly goals.  He can have occasional contact with supervisors
          and brief, incidental contact with co-workers and the general public.
12        The claimant would be off-task five percent of the workday.

13   (Doc. 12-3 at 29.)  At step four, the ALJ noted that the vocational expert testified that Plaintiff's

14   "military work experience cannot readily be classified into any occupation listed in the Dictionary

15   of Occupational Titles."  (*Id.* at 33.)  Therefore, the ALJ indicated she proceeded with the

16   sequential evaluation "as though the [plaintiff] has no past relevant work." (*Id.*) With the

17   identified RFC, the ALJ found at step five that "there are jobs that exist in significant numbers in

18   the national economy that the claimant can perform."  (*Id.* at 34.)  The ALJ concluded at step five

19   that Plaintiff was not disabled as defined by the Social Security Act.

20        Following the ALJ's decision, Plaintiff submitted additional evidence to the Appeals

21   Council, including: (1) a physical medical source statement from Joy Anne Rodriguez, M.D., and

22   (2) a mental residual functional capacity questionnaire from Jeffrey Fay, MSN, PMHNP.  (*See*

23   Doc. 12-3 at 7.)  The Appeals Council found "this evidence does not show a reasonable

24   probability that it would change the outcome of the decision."  (*Id.*)  The Appeals Council "did

25   not exhibit this evidence," and "found no reason" to review the ALJ's decision.  (*Id.* at 6, 7.)

26   **II.    Issues Raised**

27        Plaintiff contends that the ALJ "failed to offer legitimate reasons for rejecting Plaintiff's

28   subjective complaints," which resulted in exclusion of his work-related limitations from the

2

residual functional capacity.  (Doc. 18 at 7; *see also id.* at 7-11.)  He asserts the ALJ also erred in weighing the opinion of Marian Carapezza, Plaintiff's therapist, because the ALJ "failed to set forth a germane reason for rejecting her opinion."  (*Id.* at 11; *see also id.* at 11-13.)  Finally, Plaintiff argues that "the Appeals Council incorrectly determined that additional evidence submitted by Plaintiff was not material and therefore erroneously failed to consider the additional evidence."  (*Id.* at 13.)  Plaintiff contends these errors by the ALJ and Appeals Council warrant a "remand[] for further proceedings including a de novo hearing and new decision."  (*Id.* at 15.)

### III.    Findings and Recommendations

The magistrate judge found the ALJ identified clear and convincing reasons to reject Plaintiff's subjective complaints.  (Doc. 23 at 4-10.)  The magistrate judge determined that the ALJ considered the following factors: (1) the lack of supporting medical evidence, (2) "Plaintiff's work record and activities of daily living," and (3) "Plaintiff's conservative treatment."  (*Id.* at 5-9.)  Upon consideration of these factors, the magistrate judge determined that "the ALJ did not err in discounting Plaintiff's symptom testimony."  (*Id.*)

Next, the magistrate judge found the ALJ properly addressed the opinion of Marian Carapezza, a licensed clinical social worker.  (Doc. 23 at 10-12.)  The magistrate judge observed that "[u]nder the regulations then-applicable to Plaintiff's claims," the ALJ was required to identify germane reasons to discount Ms. Carapezza's opinion.  (*Id.* at 10-11.)  The magistrate judge determined the ALJ carried this burden, because the ALJ "offered the germane reason of inconsistency with objective medical evidence for assigning little weight to [Ms.] Carapezza's opinion."  (*Id.*)  To the extent Plaintiff argued that the ALJ rejected the opinion because Ms. Carapezza based it upon Plaintiff's self-reports, the magistrate judge opined "the ALJ did not solely discount the opinion because it was based upon self-reporting, but because it was inconsistent with the objective medical evidence."  (*Id.* at 12, n.4.)

Turning to the actions of the Appeals Council, the magistrate judge found "Plaintiff's argument that this case should be remanded to the ALJ so that he may consider the new evidence from Dr. Rodriguez and Nurse Fay is misplaced."  (Doc. 23 at 14.)  The magistrate judge stated, "The Appeals Council has already considered this evidence and found that it does not provide a

1    basis for changing the ALJ's decision." (*Id.*, citing AR 6 [Doc. 12-3 at 7].)  Therefore, the

2    magistrate judge considered "this evidence in reviewing the administrative record."  (*Id.*)  In

3    doing so, the magistrate judge found "a review of the record reveals that Dr. Rodriguez's and

4    Nurse Fay's statements do not undermine the ALJ's decision."  (*Id.*; *see also id.* at 14-17.)  The

5    magistrate judge opined, "While the statements from Dr. Rodriguez and Nurse Fay are relevant

6    and material to the extent the Appeals Council included them in the record, the ALJ's findings are

7    nonetheless supported by substantial evidence when this evidence is considered in the context of

8    the entire record."  (*Id.* at 17.)  Consequently, the magistrate judge found Plaintiff's new evidence

9    and the Appeals Council's analysis were not a basis for remand.  (*Id.*)

10   **IV.     Objections and Response**

11         Plaintiff filed timely objections to the Findings and Recommendations, maintaining the

12   decision to deny benefits "contains errors of law and is not supported by substantial evidence as

13   required by 42 U.S.C. § 405(g)."  (Doc. 26 at 1.)

14         Plaintiff objects to the finding of the magistrate judge that the ALJ did not err in

15   evaluating his subjective complaints.  (*Id.* at 2-7.)  Plaintiff contends "the ALJ mischaracterizes

16   the Plaintiff's reports of daily activities as extreme," because the only activities he identified

17   included doing yard work, walking around the neighborhood, and attending a session of

18   Gambler's Anonymous.  (*Id.* at 3.)  He maintains that although the ALJ referred to the notations

19   by treatment providers that Plaintiff was independent with activities of daily living, there are no

20   specific findings as to how the activities are inconsistent with his testimony.  (*Id.* at 3-4.)  Plaintiff

21   also contends that the ALJ erred in considering Plaintiff's lack of intent to work.  (*Id.*)  Finally,

22   Plaintiff argues the ALJ erred in finding his "impairments were controlled effectively with

23   conservative treatment."  (*Id.* at 7; *see also id.* at 5-7.)

24         Plaintiff also disputes the magistrate judge's determination that the ALJ identified

25   germane reasons to discount the opinion of Ms. Carapezza.  (Doc. 26 at 8-9.)  Plaintiff argues the

26   magistrate judge erred in finding the ALJ properly identified inconsistency with the objective

27   medical evidence was a germane reason for discounting the opinion, because "the ALJ does not

28   actually cite any objective evidence that reflects such inconsistency."  (*Id.* at 8, citing AR 31-32

                                             4

1  [Doc. 12-3 at 32-33].)  Instead, Plaintiff asserts the treatment notes identified "reflect significant

2  abnormalities consistent with Plaintiff's reports."  (*Id.* at 8.)

3      The Commissioner filed a response to Plaintiff's objections, asserting the Court should

4  adopt the Findings and Recommendations.  (Doc. 27.)  According to the Commissioner,

5  "[s]ubstantial evidence supports the ALJ's findings" regarding Plaintiff's testimony, "and

6  Plaintiff offers no compelling argument as to how the ALJ erred or why this Court should not

7  adopt the Recommendations affirming the ALJ's decision regarding the evaluation of Plaintiff's

8  subjective complaints."  (*Id.* at 2.)  The Commissioner also contends that "the Magistrate Judge

9  correctly concluded[] the ALJ did not err by according little weight to LCSW Carapezza's

10  opinion because it was inconsistent with objective findings on clinical examination."  (*Id.*)  The

11  Commissioner asserts that contrary to Plaintiff's assertions, the ALJ and magistrate judge cited

12  objective medical evidence reflecting such inconsistencies, including "the lack of treatment

13  records demonstrating deficits in attention or concentration."  (*Id.*, quoting Doc. 23 at 12.)

14  **V.      Discussion and Analysis**

15      A district judge may "accept, reject or modify, in whole or in part, the findings and

16  recommendations..."  28 U.S.C. § 636(b)(1).  If a party files objections, "the court shall make a de

17  novo determination of those portions of the report or specified proposed finding or

18  recommendations to which objection is made."  *Id.*  A *de novo* review requires the Court to

19  "consider[] the matter anew, as if no decision had been rendered."  *Dawson v. Marshall*, 561 F.3d

20  930, 932 (9th Cir. 2009).  In contrast, where no objection is made, that Court reviews that portion

21  of the Findings and Recommendations "for clear error."  *See United States v. Thrift*, 2024 WL

22  1655093, at *1 (E.D. Cal. Apr. 27, 2024) (citing Fed. R. Civ. P. 72(b)).

23      **A.      Plaintiff's subjective complaints**

24      In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must

25  determine first whether objective medical evidence shows an underlying impairment "which

26  could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v.*

27  *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

28  (9th Cir. 1991)).  Second, if there is no evidence of malingering, the ALJ must set forth clear and

5

1    convincing reasons for rejecting subjective complaints.  *Id.* at 1036.  An ALJ may consider many

2    factors to assess a claimant's statements, including, for example: (1) the objective medical

3    evidence, (2) the claimant's reputation for truthfulness, (3) inconsistencies in testimony or

4    between testimony and conduct, (4) the claimant's daily activities, (5) an unexplained, or

5    inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and

6    (6) testimony from physicians about the nature, severity, and effect of the symptoms of reported

7    by a claimant.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*,

8    278 F.3d 947, 958-59 (9th Cir. 2002).

9        The ALJ found Plaintiff's "medically determinable impairments could reasonably be

10    expected to cause symptoms of the nature alleged," and did not identify evidence of malingering.

11    (Doc. 12-3 at 30.)  Therefore, the ALJ was required to identify clear and convincing reasons for

12    rejecting Plaintiff's testimony.  The ALJ opined Plaintiff's "statements concerning the intensity,

13    persistence and limiting effects of these symptoms are not entirely consistent with the medical

14    evidence and other evidence in the record…". (*Id.*)  The parties dispute whether the reasons

15    identified by the ALJ to reject Plaintiff's subjective statements—namely, the objective medical

16    evidence, the treatment received, Plaintiff's work record, and activities of daily living—are "clear

17    and convincing" reasons supported by substantial evidence to reject Plaintiff's subjective

18    statements.  (Doc. 18 at 7-11; Doc. 21 at 5-8.)

19            1.    Treatment received

20        When evaluating a claimant's subjective statements, the ALJ may consider "the type,

21    dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c).

22    The treatment a claimant received, especially when conservative, is a legitimate consideration in

23    evaluating a plaintiff's subjective complaints.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)

24    ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding

25    severity of an impairment"). Importantly, "the fact that treatment may be routine or conservative

26    is not a basis for finding subjective symptom testimony unreliable absent discussion of the

27    additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*,

28    2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018) (quoting *Moon v. Colvin*, 139 F. Supp. 3d

1    1211, 1220 (D. Or. 2015)).  Thus, an ALJ errs in rejecting subjective complaints on these grounds

2    where she fails "failed to explain why [the treatment] is routine or conservative or what more

3    aggressive treatment was available and appropriate for Plaintiff." *Candice C. v. Saul*, 2019 WL

4    5865610 at *4 (C.D. Cal. Nov. 8, 2019).

5         Summarizing the medical evidence, the ALJ acknowledged that Plaintiff "was admitted

6    for inpatient psychiatric care four years ago, from June 24 to June 30, 2025."  (Doc. 12-3 at 31.)

7    The ALJ indicated that "otherwise his mental impairments have been managed with case

8    management, individual therapy, group support, and medication management, such as the use of

9    bupropion and venlafaxine."  (*Id.*)  The ALJ opined: "[Plaintiff] has not been recommended for

10   greater treatment measures reasonably consistent with the degree of limitation he alleged.  Rather,

11   he has been prescribed routine, conservative care since July 2015…" (*Id.*)

12        Importantly, the ALJ does not appear to acknowledge that Plaintiff's inpatient psychiatric

13   treatment occurred doing the adjudicated period.  (*See* Doc. 12-3 at 31.)  Such treatment is plainly

14   not conservative.  Likewise, the ALJ erred in evaluating the treatment Plaintiff received because

15   his psychiatric medication—including bupropion and venlafaxine (effexor)—is not conservative

16   treatment.  *See, e.g., Drawn v. Berryhill,* 728 Fed. App'x 637, 642 (9th Cir. 2018) (finding an

17   "ALJ improperly characterized [the claimant's] treatment as 'limited and conservative' given that

18   she was prescribed a number of psychiatric medications"); *Rebeka M. v. Dudek*, 2025 WL

19   756939, at *7 (D. Or. Mar. 10, 2025) ("prescription of psychiatric medications generally is not

20   considered a conservative treatment for a mental impairment"); *see also Turner v. Dudek*, 2025

21   WL 1532116, at *6 (E.D. Cal. May 27, 2025) (finding the ALJ erred in finding the claimant

22   received conservative care where the medication included Effexor and klonopin); *Saltzman v.

23   Comm'r of Soc. Sec*., 2019 WL 6683130, at *14 (E.D. Cal. Dec. 6, 2019) (finding the plaintiff's

24   treatment was not conservative where the "mental health treatment involve[d] powerful

25   prescription medications" including bupropion).

26        Moreover, although the ALJ indicated Plaintiff was not "recommended for greater

27   treatment measures reasonably consistent with the degree of limitation he alleged" (Doc. 12-3 at

28   31), the ALJ did not identify any additional treatment that she believed was available.  Without

7

1    further findings, the ALJ erred in rejecting Plaintiff's subjective statements on these grounds.  *See,*

2    *e.g., Candice C.*, 2019 WL 5865610 at *4;  *Calleres v. Comm'r of Soc. Sec.*, 2020 WL 4042904 at

3    *5 (E.D. Cal. July 17, 2020) (concluding a claimant's conservative treatment was not a clear and

4    convincing reason for discounting testimony where the ALJ did not identify any additional

5    "treatment that is available for such impairments … that the [claimant] did not use").

6         Given the failure to acknowledge that Plaintiff's inpatient care occurred during the

7    adjudicated period, the mischaracterization of Plaintiff's treatment as conservative, and failure to

8    identify the "greater treatment measures" the ALJ believed were available, the Court is unable to

9    find the treatment received is a clear and convincing reason to reject his subjective complaints.

10                        2.     Work history

11        A claimant's work record—or lack thereof—can be considered in evaluating a claimant's

12   subjective complaints.  *See* 20 C.F.R. § 416.929(c)(3) ("We will consider all of the evidence

13   presented, including information about your prior work record"); *Thomas*, 278 F.3d at 959

14   (holding claimant's spotty work history prior to claiming disability constituted a clear and

15   convincing reason for discounting testimony).

16        The ALJ indicated that she gave "due consideration to the claimant's work record," noting

17   that Plaintiff had "a steady work record prior to the alleged onset date of disability."  (Doc. 12-3

18   at 32.)  The ALJ also observed that Plaintiff "reported that he has no intention of ever returning to

19   work."  (*Id.*, citing Exh. 12D; 1F/8, 19.)  Review of the ALJ's cited records offers limited support

20   for these findings.  Exhibit 12D is the "certified earnings record," and does not contain any

21   information regarding Plaintiff's willingness to work.  (Doc. 12-6 at 37-39.)  However, Exhibit 1F

22   contains Plaintiff's VA psychiatry treatment notes, and indicate that Plaintiff reported at his

23   mental health intake appointment in September 2016 that he "had a rank of E-7 at separation and

24   has no intention of working again."  (Doc. 12-8 at 20.)  In November 2016, Plaintiff also

25   indicated that he had "no plans on ever joining the work place."  (*Id.* at 9.)

26        On the other hand, at the administrative hearing, Plaintiff stated: "You don't think I've

27   thought about going to work?  I've actually tried getting online and looking for a damn job.  I

28   lasted about two minutes, before my mind just said go fuck yourself…. I'm not okay.  There's

8

something wrong with me." (Doc. 12-3 at 57.)  The ALJ does not address—or even acknowledge — this testimony related to Plaintiff's intent to work.  (*See* Doc. 12-3 at 32.)  Because the ALJ fails to address Plaintiff's hearing testimony on the topic, the Court cannot find Plaintiff's "work record" was a clear and convincing reason for rejecting Plaintiffs testimony concerning the severity of his symptoms.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (an ALJ cannot ignore or omit probative evidence).

### 3.    Plaintiff's level of activity

An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's subjective statements. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Daily activities properly "form the basis for an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (factors to consider in evaluating a claimant's statements include "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting").  Here, the ALJ did not make either of the required findings.

The ALJ purported to consider Plaintiff's "activities of daily living," and referenced her findings at step two of the sequential evaluation.  (Doc. 12-3 at 32.)  At step two, the ALJ noted the "treatment records indicate [Plaintiff] is independent with his activities of daily living."  (*Id.* at 28, citing Ex. 2F/52, [Doc. 12-10 at 53] 9F/5 [Doc. 12-21 at 12], 11F/26 [Doc. 12-12 at 84].)  The ALJ concluded that "the weight of the evidence indicates that it is more likely than not that, to the extent the claimant's activities of daily living are limited, this is due primarily to non-disability factors, such as a lifestyle choice, rather than being the necessary consequence of his impairments." (*Id.* at 32.)

As Plaintiff asserts, the ALJ did not identify any activities of *daily* living.  Review of the cited treatment records reveals that two simply state that Plaintiff was "independent with his ADL" and "Independent of his ADL's," without specifying the activities considered.  (*See* Doc. 12-10 at 53; Doc. 12-21 at 84.)  The other cited evidence—a mental disorder questionnaire

1  form—indicates that Plaintiff was able to do "household chores," but did not specify either the

2  chores performed or the frequency.  (Doc. 12-21 at 12.)  The ALJ also observed that Plaintiff was

3  "able to function outside his home by walking regularly, doing yard work, and going to a casino."

4  (Doc. 12-3 at 28. [citation omitted].)  However, the ALJ again failed to address the frequency of

5  the activities identified.  Indeed, the same mental disorder questionnaire form cited by the ALJ

6  indicated that Plaintiff only left his house "for necessary chores," and that while Plaintiff used to

7  enjoy running or walking, he could not "motivate himself to leave the house to exercise."  (Doc.

8  12-21 at 12.)

9  　　　　Previously, this Court found error when the ALJ did not identify "activities in the record

10  that would contradict Plaintiff's reported symptoms."  *Alfaro v. Kijakazi*, 2023 WL 8021666, at

11  *9 (E.D. Cal. Nov. 20, 2023).  In *Alfaro*, the ALJ stated instead that "the weight of the evidence

12  indicates that it is more likely than not that, to the extent the claimant's activities of daily living

13  are limited, this is due primarily to non-disability factors, such as lifestyle choices, rather than

14  being the necessary consequence of their impairments." *Id.*  The Court found that due to the lack

15  of specific findings by ALJ, the claimant's activities were not a clear and convincing reason for

16  rejecting his complaints. *Id.*  Here, the ALJ made the *identical* finding and her decision suffers

17  the same infirmities as those identified in *Alfaro*, because the ALJ failed to explain how the

18  limited activities identified conflict with Plaintiff's subjective complaints concerning the severity

19  of his symptoms.  (*See* Doc. 12-3 at 32.)  Further, the ALJ did not make the alternative finding

20  that the activities identified could be transferred to a work setting.  Due to the lack of specific

21  findings by the ALJ, Plaintiff's "daily activities" was not a clear and convincing reason to

22  discount his testimony.  *See Alfaro*, 2023 WL 8021666, at *9.

23  　　　　　　　　4.　　Objective medical evidence

24  　　　　Consistency with the objective medical evidence was the sole remaining factor considered

25  by the ALJ to address Plaintiff's subjective statements concerning the severity of his symptoms.

26  (*See* Doc. 12-3 at 30-32.)  In general, "conflicts between a [claimant's] testimony of subjective

27  complaints and the objective medical evidence in the record" can constitute specific and

28  substantial reasons that undermine … credibility."  *Morgan v. Comm'r of Social Sec. Admin*., 169

F.3d 595, 600 (9th Cir. 1999).  However, a claimant's subjective statements concerning the severity of his symptoms "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence…."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").  For this reason, the ALJ's analysis is insufficient.

### 5.    Conclusion

The Ninth Circuit observed, "The clear and convincing standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  Thus, an ALJ must identify "specific reasons for the weight given to the individual's symptoms," in a manner "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).  The ALJ failed to carry this burden, and the Court is unable to conclude substantial evidence supports the ALJ's decision. Therefore, the Court declines the findings of the magistrate judge related to the evaluation of Plaintiff's subjective complaints.

### B.    Opinion of Ms. Carapezza, LCSW

Under the regulations in place at the time Plaintiff filed his application, licensed clinical social workers, such as Ms. Carapezza, did not qualify as acceptable medical sources.  *See Delegans v. Berryhill,* 766 Fed. App'x 477, 480 (9th Cir. 2019) (acknowledging that the licensed clinical social worker qualified as an "other source" under the prior regulations).  Rather, licensed clinical social workers were evaluated in the same manner as "lay witnesses."  *See Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (identifying the different standards for an ALJ to reject the opinions from acceptable medical sources compared to "other sources").  As such, the ALJ was required to identify reasons "germane to the witness" when rejecting the opinion of a LCSW.  *See Delegans*, 766 Fed. App'x at 480 (with an application filed prior to March 27, 2017, the Court found no error in the ALJ's rejection of testimony from a licensed clinical social worker because the ALJ provided germane reasons for discounting the opinion).

The ALJ gave "little weight" to the opinion of Ms. Carapezza. (Doc. 12-3 at 32.) The ALJ explained the weight given by stating:

> Ms. Carapezza is not an acceptable medical source (20 CFR, 404.1527(f)). More significantly, her opinion is neither supported by nor consistent with the preponderance of the evidence. Ms. Carapezza expressly based her opinion upon the claimant's self-reported limitations, including his purported inability to pay attention for the duration of one-hour television programs and his purported anger episodes, particularly towards authority figures. However, as is explained above, such abnormalities are not documented in the case record. For example, the claimant's treatment records do not document any persistent deficits with attention or concentration. He merely had difficulty with the serial sevens task during one examination. Similarly, although he has reported significant social deficits, he has not displayed any serious social abnormalities upon examination and, by his own report, is able to function in such social settings as a casino. Accordingly, the statement of Ms. Carapezza is given little weight as opinion evidence.

(*Id.*) The parties dispute whether the reasons identified by the ALJ are proper "germane" reasons. (Doc. 18 at 11-13; Doc. 21 at 8-10.)

### 1.     Status as an "other source"

The ALJ first considered that Ms. Carapezza did not qualify as an "acceptable medical source" under the regulations. However, this reason alone cannot qualify as a "germane reason" to reject the limits she identified. For example, in *Haagenson v. Colvin*, 656 Fed. App'x 800, 802 (9th Cir. 2016), the sole reason given for rejecting the opinion of an "other source" was that the nurse was not considered an acceptable medical source. The Ninth Circuit explained this notion is already presumed by regulation and is, therefore, not a germane reason on its own for rejecting the opinion. *Id.* Thus, the ALJ could reject the opinion of Ms. Carapezza only provided she identified other, proper reasons for doing so.

### 2.     Basis on Plaintiff's statements

It appears that the ALJ rejected the opinion, in part, for being based upon Plaintiff's subjective statements. When an ALJ identifies clear and convincing reasons for rejecting a claimant's subjective complaints, and lay testimony was similar to such complaints, it follows that the ALJ also identified germane reasons for rejecting the lay witness testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). However, to the extent the ALJ

1    rejected the statements of Ms. Carapezza because they were based upon the subjective complaints

2    the ALJ rejected, the reasons identified were not "clear and convincing."  As a result, the reliance

3    upon Plaintiff's subjective statements was not a proper germane reason for rejecting the opinion

4    of Ms. Carapezza.

5                            3.    Inconsistency with the medical record

6            The Ninth Circuit determined that "inconsistency with other medical records is a germane

7    reason to reject the opinion of a non-acceptable medical source."  *Green v. Berryhill*, 731 Fed.

8    App'x. 596, 599 (9th Cir. 2018), citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012);

9    *Bayliss v. Barnhart*, 427 F.3d 1211, 1211 (9th Cir. 2005) ("inconsistency with medical evidence

10   is one [germane] reason").  However, Ninth Circuit courts have criticized the rejection of lay

11   witness statements on the grounds that the statements are inconsistent with the medical record,

12   particularly where the ALJ fails to specifically identify the inconsistencies.  *See, e.g.*, *Feeney v.

13   Colvin*, 2014 WL 463798, *7 (E.D. Cal. Feb. 4, 2014) (acknowledging "inconsistency with the

14   medical evidence may be a reason to reject lay witness testimony," but finding substantial

15   evidence did not support the ALJ's analysis of the lay witness testimony where the ALJ did not

16   identify "what evidence contradicts" the lay witness statement); *Noa v. Berryhill*, 2018 WL

17   1696819 at *7-8 (N.D. Cal. Apr. 6, 2018) (finding error where the ALJ failed to identify the

18   inconsistency).

19           The ALJ indicated that medical evidence contradicted the opinion of Ms. Carapezza, such

20   as her opinion related to Plaintiff's limitations with concentration and attention.  (Doc. 12-3 at

21   32.)  The ALJ observed that "such abnormalities are not documented in the case record" and

22   "treatment records do not document any persistent deficits with attention or concentration."  (*Id.*)

23   However, the ALJ does not cite any treatment records to support her conclusion and does not

24   discuss such evidence elsewhere in her decision.[2]  On the other hand, a treatment note indicates

25   that when Plaintiff complained of difficulty with concentration and short-term memory, his

26   memory was "not formally assessed" by the provider.  (Doc. 12-22 at 371.)  Furthermore, as the

27   _____

28   [2] Although the magistrate judge referenced two treatment records with findings related to Plaintiff's attention and
     concentration (*see* Doc. 23 at 12), such records were not identified by the ALJ.

                                                    13

1    ALJ plainly acknowledges, Plaintiff had difficulty with "serial sevens" during an examination.

2    (Doc. 12-8 at 25; Doc. 12-23 at 665.)  The Court is unable to find inconsistency with the "case

3    record" is a proper germane reason to reject the limitations Ms. Carapezza identified, including

4    those related to attention and concentration.

5                    **C.**      **New evidence before the Appeals Council**

6              Although neither party filed objections related to the magistrate judge's findings

7    concerning the new evidence before the Appeals Council, the Court reviewed the findings as part

8    of its review of the entire matter.  Importantly, the Court's review of the matter revealed error in

9    the analysis related to the presentation of evidence before the Appeals Council.

10             The magistrate judge found, "The Appeals Council has already considered [the new]

11   evidence and found that it does not provide a basis for changing the ALJ's decision." (Doc. 23 at

12   14.)  Significantly, the word "considered" is "a term of art" when addressing actions taken by the

13   Appeals Council.  *Hensley v. Comm'r of Soc. Sec.*, 2022 WL 891289, at *11 (E.D. Cal. Mar. 25,

14   2022) (citation omitted), *affirmed by Hensley v. Kijakazi*, 2023 WL 4700635 (9th Cir. July 24,

15   2023).  The Ninth Circuit distinguishes between evidence the Appeals Council formally

16   "considered" and evidence it merely "looked at" to determine whether the additional evidence

17   was incorporated into the record.  "[W]hen the Appeals Council *considers* new evidence in

18   deciding whether to review a decision of the ALJ, that evidence becomes part of the

19   administrative record, which the district court must consider when reviewing the Commissioner's

20   final decision for substantial evidence." *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157,

21   1163 (9th Cir. 2012) (emphasis added).  In contrast, when the Appeals Council "only *looked at*

22   the evidence, and determined it did not meet the [Social Security Regulations'] standard for

23   consideration ... the new evidence did not become part of the record, and [the court] may not

24   consider it." *Amor v. Berryhill*, 743 Fed. App'x 145, 146 (9th Cir. 2018) (emphasis added).

25             The record shows that the Appeals Council did not "consider" the evidence as the

26   magistrate judge indicated, but rather the Appeals Council "looked at" the new evidence and

27   found it "does not show a reasonable probability that it would change the outcome of the

28   decision." (Doc. 12-2 at 12-3 at 6.)  The Appeals Council explicitly stated it "did not exhibit this

                                              14

1  evidence." (*Id.*; *see also* Doc. 12-2 at 1 [identifying the new evidence under the "Court Transcript

2  Index," rather than the "Exhibits"].) This Court previously explained: "The fact that the Appeals

3  Council stated the opinion would not likely change the outcome of the ALJ's decision does not

4  dictate" that a conclusion that it considered the evidence. *Hensley*, 2022 WL 891289, at *13; *see*

5  *also Matias v. Saul*, 2021 WL 531238, at *5 n.10 (D. Haw. Feb. 12, 2021) (observing that "it is

6  well within the Appeals Council's ability[] to look at additional evidence to determine whether

7  the evidence should be part of the record; but, if the council determines the evidence is not

8  properly before it, to decide whether or not to review the ALJ's decision without relying on the

9  additional evidence"). Because the Appeals Council *looked at* the evidence and did not exhibit it,

10  the Court in turn "may not consider it" when evaluating an ALJ's decision. *Amor*, 743 Fed.

11  App'x at 146; *Hensley*, 2022 WL 891289, at *13 (considering identical statements from the

12  Appeals Council and finding it "looked at" the evidence). For this reason, the Court declines to

13  adopt the findings related to this issue.[3]

14      **D.    Remand for further proceedings**

15          The decision whether to remand a matter for further proceedings pursuant to sentence four

16  of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the

17  district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances,

18  when a court reverses an agency determination, the proper course is to remand to the agency for

19  additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S.

20  12, 16 (2002)).

21          The ALJ failed to identify legally sufficient reasons to reject Plaintiff's subjective

22  statements, which impacted the residual functional capacity determination. A remand for further

23  proceedings regarding the subjective statements of a claimant is an appropriate remedy. *Bunnell*,

24  947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with

25  sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d

26  639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of

27

28  ---
[3] In light of the determination that remand is appropriate, the Court declines to make additional findings regarding whether the Appeals Council should have, in fact, considered the evidence.

[the claimant's] subjective complaints…").  Likewise, remand is appropriate for an ALJ to properly evaluate the lay witness testimony from Ms. Carapezza.  *See Dodrill*, 12 F.2d at 919 (remanding the matter for the ALJ to "articulate specific findings" for rejecting the testimony of an "other source" lay witness).  Thus, remand for evaluation of the testimonial evidence is appropriate in this action.

**VI.    Conclusion and Order**

According to 28 U.S.C. § 636 (b)(1), this Court conducted a *de novo* review of the case.  Having carefully reviewed the entire matter, the Court finds the ALJ failed to apply the proper legal standards to evaluate Plaintiff's subjective statements and the opinion of Ms. Carapezza.  Because the must be remanded, the Court declines to adopt the recommendations.  *See, e.g.*, *Bunnell*, 947 F.2d at 348; *Dodrill*, 12 F.2d at 919.  Thus, the Court **ORDERS**:

1.    The Court declines to adopt the Findings and Recommendations (Doc. 23).

2.    Plaintiff's motion to remand (Doc. 18) is **GRANTED**.

3.    The Commissioner's request to affirm (Doc. 21) is **DENIED**.

4.    The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

5.    The Clerk of Court is directed to enter judgment in favor of Plaintiff Eduardo Felix and against Defendant Frank Bisignano, Commissioner of Social Security, and to close this case.

IT IS SO ORDERED.

Dated:    **September 25, 2025**

UNITED STATES DISTRICT JUDGE